## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02533-NYW

4455 JASON ST, LLC, and
THE DENVER BEER COMPANY, LLC,

      Plaintiffs,

v.

MCKESSON CORPORATION,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

Magistrate Judge Nina Y. Wang

      This matter comes before this court on Defendant McKesson Corporation's ("Defendant" or "McKesson") "Motion to Dismiss 4455 Jason St, LLC and Denver Beer Company's Claim for Common Law Trespass" (the "Motion to Dismiss" or "Motion"), filed September 16, 2020. [#11]. The undersigned Magistrate Judge considers the Motion to Dismiss pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes. *See* [#16]. Having reviewed the Motion and associated briefing, the applicable case law, and being fully advised in its premise, the court **GRANTS** the Motion to Dismiss for the reasons stated herein.

## BACKGROUND

      The court draws the following facts from the Complaint and presumes they are true for purposes of the instant Motion. Plaintiff Jason St, LLC ("Jason Street") is the current owner of real property located at 4455 Jason Street in Denver, Colorado (the "Property") and Plaintiff Denver Beer Company, LLC ("DBC") (with Jason Street, "Plaintiffs") is the current tenant of the Property. *See* [#1 at ¶¶ 2, 7-8, 15-17]. At some point prior to Jason Street's ownership, the

Chemical Distribution Facility was operated on portions of the Property, [*id.* at ¶¶ 18, 20-21]; McKesson is the alleged legal successor-in-interest to the various entities that owned and operated the Chemical Distribution Facility, *see* [*id.* at ¶¶ 9-10, 19, 21-23]. According to Plaintiffs, the Chemical Distribution Facility received, stored, repackaged, and distributed hazardous substances, including trichloroethylene and tetrachloroethylene, at the Property, which contaminated the Property. *See* [*id.* at ¶¶ 24-30].

Around October 2015, DBC engaged an environmental professional to complete a Phase I Environmental Site Assessment, which revealed the Chemical Distribution Facility's operations on portions of the Property. *See* [*id.* at ¶¶ 31-32]. Then, around December 2015, DBC undertook a Phase II Environmental Site Assessment to investigate soil, groundwater, and indoor air quality contamination. *See* [*id.* at ¶¶ 32-33]. The Phase II Environmental Site Assessment revealed hazardous substances in the soil, groundwater, and indoor air and attributed this contamination to the Chemical Distribution Facility. *See* [*id.* at ¶¶ 34-38]. Based on these findings, Plaintiffs contacted the Colorado Department of Public Health and Environment ("CDPHE") who, upon review of the subsurface sampling data, concluded the Property was a candidate for Colorado's Voluntary Cleanup Program—a program that provides a cleanup mechanism for environmental hazards without involving the United States Environmental Protection Agency—but ordered an offsite investigation regarding contamination migration. *See* [*id.* at ¶¶ 39-45]. The offsite investigation revealed hazardous substance contamination in the groundwater and soil vapor surrounding the Property. *See* [*id.* at ¶¶ 46-51].

In or about November 2016, Jason Street submitted its Voluntary Cleanup Program application (the "Application") to the CDPHE, identifying the risk to human health at the Property and surrounding areas caused by the hazardous substance contamination and proposing a solution

for mitigating the contamination. *See* [*id.* at ¶¶ 59-62]. The CDPHE approved the Application on or about January 23, 2017, with work commencing in February, November, and December of 2017. [*Id.* at ¶¶ 63-64]. Ongoing monitoring of the cleanup indicates that the mitigation response is working well, though additional cleanup responses will likely be required. *See* [*id.* at ¶¶ 65-70].

Seeking to recover their cleanup costs, Plaintiffs initiated this civil action on August 21, 2020, asserting three claims against McKesson under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, for: (1) cost recovery pursuant to § 107(a), 42 U.S.C. § 9607(a), ("Claim 1"); (2) contribution pursuant to § 113(f), 42 U.S.C. § 9613(f), ("Claim 2"); and (3) a declaration of McKesson's liability pursuant to § 113(g)(2), 42 U.S.C. § 9613(g), ("Claim 3"); as well as a trespass claim pursuant to Colorado law ("Claim 4"). On September 16, 2020, Defendant filed the instant Motion to Dismiss, arguing that Plaintiffs cannot assert a trespass claim against McKesson—a prior landowner of the Property. *See* [#11]. Plaintiffs have since responded in opposition to the Motion and Defendant replied. *See* [#17; #22]. Because the Motion is ripe for disposition, I consider the Parties arguments below.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Walker v. Mohiuddin*, 947 F.3d 1244,1248-49 (10th Cir. Jan. 14, 2020) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted). In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and

3

views those allegations in the light most favorable to the plaintiff." *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

## ANALYSIS

To establish a trespass claim under Colorado law, Plaintiffs must allege a "physical intrusion upon the property of another without the proper permission from the person legally entitled to possession." *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1148 (10th Cir. 2010) (quoting *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 389 (Colo. 2001)). An unlawful intrusion can also arise when someone places a thing on or beneath the surface of real property, with liability attaching to this unlawful intrusion until it is removed. *See Hoery v. United States*, 64 P.3d 214, 217-18 (citing Restatement (Second) of Torts §§ 158(a) cmt. i, 159, 161 cmt. b). Thus, "[a]n individual becomes subject to liability for trespass by <u>intentionally</u> entering, or by causing a thing or third person to enter, <u>land possessed by someone else</u>." *Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, 382 P.3d 1249, 1258 (Colo. App. 2016) (emphasis added).

Plaintiffs allege McKesson's legal predecessors owned and operated the Chemical Distribution Facility on portions of the Property, during which time hazardous substances contaminated the soil, groundwater, and air quality on the Property and off-site locations. *See* [#1 at ¶¶ 2-3, 5, 10, 15-24, 26-30, 34-38, 46-51, 96]. Plaintiffs further allege that, despite cleanup efforts, hazardous substances remain in the soil, groundwater, and air at the Property, causing Plaintiffs to incur continual costs associated with mitigating the contamination. *See* [*id.* at ¶¶ 64-72, 97-101]. According to Plaintiffs, McKesson is liable for a continuing trespass under Colorado common law. *See generally* [*id.* at ¶¶ 95-101].

4

Defendant contends that Plaintiffs cannot maintain a trespass claim because they cannot allege the intentional intrusion by Defendant on land possessed by someone else. [#11 at 8-9; #22 at 8-9]. That is because the alleged trespass, i.e., hazardous substances contamination at the Property, occurred on land possessed by Defendant at the time of the trespass. [#11 at 9; #22 at 9-11, 15]. According to McKesson, consistent with other courts to consider similar issues, it cannot be liable to Plaintiffs now for any trespass that occurred while McKesson owned the Property. *See* [#11 at 9-14; #22 at 8-14]. I respectfully agree with McKesson.

As acknowledged by both Parties, there is no binding authority from the Colorado Supreme Court as to whether a trespass claim can lie against a former landowner. [#11 at 5; #17 at 11]. Absent a determination from the state's highest court, the federal court is left to predict what the state supreme court would do, including seeking guidance from decisions rendered by other courts in the relevant state. *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). Given the lack of guidance from Colorado's courts, this court looks to other jurisdictions' jurisprudence for guidance in making its *Erie* guess[1] as to how the Colorado Supreme Court would rule, as the court is also free to consider the decisions of "other state courts and federal courts, in additional to the general weight and trend of authority." *See Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001).

At its core, Plaintiffs' trespass claim stems from McKesson's legal predecessors' use of the Property, which Jason Street now owns with DBC as its tenant, and they seek damages from the contamination remaining on the Property. Looking first at Colorado's general application of

---

[1] This terminology is derived from the Supreme Court of the United States case of *Erie R. Co. v. Tompkins*, which held that, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state" as "declared by its Legislature in a statute or by its highest court in a decision." 304 U.S. 64, 78 (1938).

5

common law trespass, based on these facts, Plaintiffs fail to allege McKesson's (or its predecessors') <u>intentional</u> intrusion on the <u>property of another</u>. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 603 (Colo. App. 2007) (explaining that trespass requires an intent to intrude on the land of another). This is because the alleged intrusion occurred on land owned by McKesson and its legal predecessors—not land of another. *See, e.g.*, *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189-90 (Md. 1994) (finding no trespass where the prior owner contaminated the land now owned by a subsequent owner because there was no intrusion on the land of another). The fact that Jason Street now owns the Property does not counsel otherwise.

While not controlling, the court finds persuasive *Moore v. Texaco, Inc.*, 244 F.3d 1229 (10th Cir. 2001). There the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") considered a landowner's trespass claim under Oklahoma law based on the prior owner's alleged contamination of the soil and water on real property. *Moore*, 244 F.3d at 1230-31. Like Colorado, Oklahoma recognized a claim for trespass where "an actual physical invasion of the real estate of *another* [occurs] without the permission of the person lawfully entitled to possession." *Id.* at 1233 (emphasis in original) (quoting *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla.1998)). The Tenth Circuit held that the plaintiff could not maintain a trespass claim under the facts presented because "the pollution occurred while [the prior landowner] owned the property," and thus there was no "physical invasion of real estate owned by anyone except [the prior landowner] itself." *Id.* The same is true here.

Plaintiffs counter that they can proceed with a trespass claim for several reasons. Respectfully, the court concludes that none are persuasive. I consider each in turn.

***First***, Plaintiffs argue that they do not own the "same" property as McKesson's predecessors but rather own land adjacent to the Property that is similarly impacted by the

6

contamination. *See* [#17 at 8-9]. Plaintiffs could potentially maintain a trespass claim against McKesson limited to adjoining land outside the boundaries of the Property once owned by McKesson and now owned by Jason Street, if Plaintiffs allege the contamination has affected off-Property locations and if Plaintiffs (either singularly or in combination) own those lands. *See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 933 (Colo. 1997) ("The elements of the tort of trespass consist of a physical intrusion upon the property of another without the permission of the person lawfully entitled to the possession of the real estate."). This theory, however, is not clear from the facts alleged in the Complaint.

Plaintiffs point to Paragraphs 20 and 22 of the Complaint for their proposition that Jason Street owns, and DBC leases, land impacted by the trespass that were never owned by McKesson or its predecessors. [#17 at 5]. But an examination of Paragraphs 20 and 22 of the Complaint do not allege facts that support such a theory. *See* [#1 at ¶¶ 20, 22]. The Complaint defines "Site," as the property currently known as 4455 Jason Street in Denver, Colorado which the court refers to as the "Property." [#1 at ¶ 2]. Paragraph 20 alleges that in or about November 1947, Merchants Chemical Company ("Merchants") acquired a portion of the Property, which was then known as 1211 44th Avenue, Denver, Colorado ("1211 44th Avenue"). [*Id.* at ¶ 20]. Paragraph 22 continues that in or about 1958, McKesson & Robbins, Inc. acquired Merchants, thereby acquiring the Property. [*Id.* at ¶ 22]. These factual averments, standing alone, do not allege trespass for any adjoining land outside the boundaries of the Property, or within the Property but excluding the area formerly known as 1211 44th Avenue. And Plaintiffs may not effectively amend their Complaint through their Response to the Motion to Dismiss. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). To the extent that Plaintiffs contend that the entirety of

the Property, including the area formerly known as 1211 44th Avenue, is subject to a trespass claim under Colorado common law, the court respectfully disagrees.

***Second***, Plaintiffs argue that the continued presence of the hazardous substances on the Property constitutes a continuing trespass and so it does not matter when the alleged intrusion occurred. *See* [#17 at 9]. Plaintiffs are correct that "an actor's failure to remove a thing tortiously placed on another's land is considered a 'continuing trespass' for the entire time during which the thing is wrongfully on the land." *Hoery*, 64 P.3d at 218 (citing Restatement (Second) of Torts § 161 cmt. b.). But Plaintiffs ignore the critical element of a trespass claim, whether continuous or otherwise, that the intrusion be onto the land of another. *See id.* ("an actor's failure to remove a thing tortiously placed on another's land is considered a 'continuing trespass' (emphasis added)); *see also Wellesley Hills Realty Tr. v. Mobil Oil Corp.*, 747 F. Supp. 93, 99 (D. Mass. 1990) ("Mobil owned and was in possession of the property when it allegedly released the oil causing the contamination. Thus, Mobil's releases of oil were not unprivileged, and Mobil clearly was not intruding on land in the possession of another."). Indeed, § 161 of the Restatement (Second) of Torts, concerning continuous trespass, cannot be read in isolation from § 158 of the Restatement (Second) of Torts, which conditions any trespass on the intrusion of the land of another. *See Rosenblatt*, 642 A.2d at 190 (explaining that § 161 of the Restatement (Second) of Torts implies that a continuing trespass affects the land of another—a proposition supported by § 158). As pleaded, McKessons' predecessors, during their ownership, contaminated the Property—the same property Plaintiffs now own. *See generally* [#1]. "Contaminating one's own property under this definition is not, and cannot be, a continuing trespass." *One Wheeler Rd. Assocs. v. Foxboro Co.*, 843 F. Supp. 792, 798 (D. Mass. 1994).

***Third***, Plaintiffs argue that McKesson may still be liable for its predecessors' pollution on the Property, because "landowners have a duty to prevent activities and conditions on their land from creating a risk of harm to others" under a public nuisance theory of liability. *See* [#17 at 10-11]. Plaintiffs are correct that a claim for nuisance may lie where an actor substantially invades another's "interest in the use and enjoyment of [its] property" and that a nuisance may be continuing in nature. *Hoery*, 64 P.3d at 218. But Plaintiffs have not asserted a separate nuisance claim against McKesson. In addition, they have neither pleaded nor explained how a theory of nuisance relates to their trespass cause of action, and thus any alleged nuisance caused by McKesson's predecessors cannot save Plaintiffs' trespass claim.

***Fourth***, and finally, Plaintiffs attempt to distinguish McKesson's reliance on *Moore* and cases outside Colorado and the Tenth Circuit. *See* [#17 at 11-14]. Contrary to Plaintiffs' assertions, the court does not see much distinction between the facts underlying *Moore* and the present action. Trespass under Oklahoma and Colorado law requires nearly identical elements, and in *Moore*, as here, the trespass claim hinged on pollution that occurred under the previous landowner's use and ownership of the land. Indeed, there are no allegations suggesting McKesson or its predecessors polluted the Property once Plaintiffs took ownership. Nor does the court find convincing Plaintiffs' reliance on out-of-state and out-of-circuit caselaw to suggest a subsequent landowner may sue a prior landowner for trespass, as many of the cases arise in the context of a nuisance claim or the context of a lessor-lessee agreement.[2] And absent controlling authority from

---

[2] Plaintiffs suggest that the doctrine of caveat emptor cannot defeat a subsequent landowner's trespass claim against a prior landowner, *see* [#17 at 12-14], but the doctrine of caveat emptor arises in the context of a lessor-lessee agreement whereby the lessor does not covenant or warrant that the property is tenable to the lessee's intended use merely by leasing the property, *see Blackwell v. Del Bosco*, 558 P.2d 563, 564 (Colo. 1976). No such agreement between Plaintiffs and McKesson (or its predecessors) exists here.

9

Colorado courts, the Tenth Circuit has clearly directed its courts to consider "other state courts and federal courts, in additional to the general weight and trend of authority." *Stuart*, 271 F.3d at 1228. In doing, this court has been mindful not to create or modify state law, but only to predict how the Colorado Supreme Court might rule. *See Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005).

In sum, the court concludes that Plaintiffs cannot maintain their trespass claim against McKesson as pleaded, because Plaintiffs cannot allege the intentional intrusion on the real property of another. And as discussed, it is not clear from the Complaint that Plaintiffs' trespass claim encompasses adjacent land to the Property owned by Plaintiffs that McKesson's predecessors did not own. Thus, the court **GRANTS** the Motion to Dismiss and **DISMISSES without prejudice** Plaintiff's trespass claim (Claim 4). *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice to allow amendment of the complaint is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to him" (internal quotation marks omitted)).

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Defendants' Motion to Dismiss [#11] is **GRANTED**; and

(2)   Plaintiff's trespass claim (Claim 4) is **DISMISSED without prejudice**.

DATED: January 14, 2021

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge